UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY ALEXANDER
LANDAEZ-CASTRO,

          Plaintiff,

    v.

SECRETARY KRISTI NOEM, IN
HER OFFICIAL CAPACITY AS
SECRETARY OF THE
DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

          Defendants.

Case No. 2:26-cv-237-KCD-NPM

_____/

## ORDER

Petitioner Anthony Alexander Landaez-Castro has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued detention contravenes the Fifth Amendment and the Administrative Procedure Act. Respondents oppose the petition. (Doc. 7.) For the reasons below, the petition is **DENIED**.

## I. Background

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Landaez-Castro illegally entered the United States on December 4, 2021. (Doc. 1 ¶ 12.) Important for reasons discussed below, he was detained at the border, given a "Notice to Appear" under "section 240," and released. (*Id.* ¶ 13; Doc. 1-2 at 2.) Landaez-Castro was recently arrested by ICE and has been in immigration custody since December 5, 2025. (Doc. 1 ¶ 2.) After processing, he landed at Glades Detention Center in the Middle District of Florida. (*Id.*) Landaez-Castro does not yet have a final order of removal. (*Id.* ¶ 19.)

## II. Discussion

Landaez-Castro's habeas petition presses several claims. First, his detention violates the INA because he is eligible for a bond hearing but is being denied such relief. (*Id.* at 16-17.) Second, his detention without a bond hearing violates the Fifth Amendment's Due Process Clause. (*Id.* at 17-18.) Third, ICE "acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law." (*Id.* at 21.) Fourth, categorically denying him a bond hearing violates the Fifth Amendment's equal protection guarantee because he is being treated differently than similarly situated noncitizens in standard removal proceedings. (*Id.*.) Fifth, the lack of individualized review offends the Suspension Clause by leaving him without any meaningful administrative or judicial avenue to test the legality of his confinement. (*Id.* at 23.) Finally, relying on the *Accardi* doctrine, Landaez-

Castro argues the government ran afoul of its own regulations governing warrantless immigration arrests. (*Id.* at 25.) The Court addresses each of these claims below.

### A. INA (Count I)

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288. So aliens falling under § 1225 are not entitled to a bond hearing.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§

3

1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Landaez-Castro, he is entitled to a bond hearing, and § 1226 is the vehicle through which he would obtain such relief. But this argument runs headlong into the facts. Landaez-Castro was apprehended at the border. That puts him squarely under § 1225. *See, e.g.*, *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States.").

An alien "who arrives in the United States (whether or not at a designated port of entry[)]" shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). Landaez-Castro concededly meets this definition. He was stopped at the border, had no legal status, and sought entry. *See Jennings*, 583 U.S. at 287 ("[A]n alien who arrives in the United States . . . but has not been admitted, is treated as an applicant for admission.").

Applicants for admission who are inadmissible must be detained pending removal proceedings. *Id.* at 297. The Government has only one alternative under this framework—it can temporarily release the noncitizen on humanitarian parole. *Id.* at 288. But make no mistake, this is not a lawful entry. A paroled noncitizen has not been admitted to the country. Instead,

4

the law treats them as if they never crossed the threshold. When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Landaez-Castro may have physically spent time in the interior of the United States after his release, the law places him exactly where he started— at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Landaez-Castro, nevertheless, argues that because the Government placed him in standard removal proceedings under § 240, his detention must be governed by § 1226(a)—which allows for bond hearings—rather than the mandatory detention provision of § 1225(b)(2). But that argument trips over the statutory text. Section 1225(b)(2)(A) commands that if an examining officer determines an applicant for admission is not "clearly and beyond a doubt entitled to be admitted," which are the facts here, "the alien shall be

5

detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). Section 1229a is the statutory codification of § 240. So pulling all this together, the INA explicitly pairs § 1225 mandatory detention with § 240 removal proceedings. The Supreme Court made this exact point in *Jennings*, explaining that § 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." 583 U.S. at 309. The Court therefore rejects the premise that simply receiving a Notice to Appear for a § 240 hearing magically pulls a noncitizen out of § 1225.

Nothing about the sequence of events surrounding Landaez-Castro's entry suggests that he is anything but an applicant for admission under § 1225. He entered the United States and was immediately apprehended at the border. Upon his encounter with authorities, he expressed a fear of returning to Venezuela and sought protection. When an individual arrives at the border without valid entry documents and credible claims of persecution, as here, the INA dictates a specific procedural path: the Government places them in removal proceedings so an immigration judge can review their claims for relief. *See Jennings*, 583 U.S. at 288. Every step—from his initial apprehension at the border to the ongoing review of his protection claims by an immigration judge under § 240—is a hallmark of the §1225(b)(2) framework.

6

As mentioned, when an inadmissible alien arrives at the border and seeks admission, § 1225 gives the Government exactly two choices. Option one: mandatory detention. Option two: temporary release "on parole." *Jennings*, 583 U.S. at 288. Because parole is the sole legal mechanism Congress provided to release an applicant for admission, like Landaez-Castro, the law must treat his release as a parole. And when that period of liberty ends, he goes right back to where the statute demands. *See Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *6 (S.D.N.Y. Dec. 15, 2025) ("Whatever 'grace' Congress and the Executive Branch have thus far bestowed upon Petitioner, including not only his initial parole but also his examination by an immigration officer under Section 1225(b)(2)(A) itself, bestows no additional rights.").

Landaez-Castro—who has never been admitted and was found by an "examining immigration officer" to be "not clearly and beyond a doubt entitled to be admitted" 8 U.S.C. § 1225(b)(2)(A)—is properly in custody under §1225(b)(2). Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Landaez-Castro's continued detention without a bond hearing cannot be in violation of the INA.

**B. Due Process Clause (Count II)**

Even if Landaez-Castro's detention without a bond hearing is authorized by the INA, he argues it violates the Due Process Clause. The

7

Court cannot agree. First, it's not entirely clear that such a claim is available for aliens held under § 1225. *See, e.g.*, *D. A. F. v. Warden, Stewart Det. Ctr.*, No. 4:20-CV-79-CDL-MSH, 2020 WL 9460467, at *8 (M.D. Ga. May 8, 2020) ("Some courts have concluded that for arriving aliens due process is whatever procedure has been authorized by Congress."). But even assuming Landaez-Castro enjoys due process protections here, they would be transgressed only by "prolonged detention" without a bond hearing. *Moore*, 2019 WL 2152582, at *9. Landaez-Castro has been in custody for just over four months. That is short of the constitutional threshold in this context. *See Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016) ("[T]here is little chance that a[n] . . . alien's detention is unreasonable until at least the six-month mark."); *see also Kameron v. Dep't of Homeland Sec.*, No. 7:19-CV-16-WLS-MSH, 2020 WL 9460465, at *3 (M.D. Ga. Mar. 27, 2020) (finding "no basis to conclude that Petitioner's now eighteen-month detention is unreasonable").

Landaez-Castro has not been in custody for a prolonged period, nor shown that his detention will be indefinite. So his claims under the Due Process Clause also fail. *See, e.g.*, *Tomlinson v. Swartz*, No. 24-24844-CV, 2025 WL 1568213, at *4 (S.D. Fla. Jan. 31, 2025).

## C. Administrative Procedure Act (Count III)

Landaez-Castro next tries to repackage his statutory challenge as a violation of the Administrative Procedure Act. He contends that the

Government's categorical refusal to consider him for release on bond is an "arbitrary" and "capricious" agency action.

The difficulty here is twofold. First, Landaez-Castro has brought this claim in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for this claim. The APA operates as a fallback option, providing a right of judicial review only when "there is

no other adequate remedy in a court." 5 U.S.C. § 704. But Landaez-Castro has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Landaez-Castro is challenging here—the APA simply leaves no room for this redundant claim. *See Fleurimond*, 2026 WL 507542, at *3; *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

### D. Equal Protection Clause (Count IV)

Landaez-Castro next takes aim at his detention under the equal protection component of the Fifth Amendment. He sees a constitutional flaw in the Government's disparate treatment: because he has been placed in standard § 240 removal proceedings, he argues he is similarly situated to other noncitizens in those proceedings who routinely receive bond hearings under § 1226(a). Categorically denying him that same opportunity, he claims, is an arbitrary and discriminatory classification. (*See* Doc. 1 at 22-23.)

Landaez-Castro does not allege discrimination based on membership in a protected class such as race or gender. Instead, he asserts a "class of one" claim as recognized by the Supreme Court in *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000). (*See* Doc. 1 at 22.) "To prove a class of one claim, the

10

plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009). The Eleventh Circuit has "frequently noted that the similarly situated requirement must be rigorously applied in the context of class of one claims." *Id.*

The trouble for Landaez-Castro begins with that rigorous first requirement. To state a viable class-of-one claim, a petitioner must point to comparators who are "prima facie identical in all relevant respects." *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010). But Landaez-Castro offers only a sweeping generalization, pointing broadly to all other noncitizens placed in § 240 removal proceedings. That brush is far too broad. Landaez-Castro is not just any noncitizen facing removal. As explained, he is an applicant for admission who was apprehended at the border. To show he was unlawfully singled out, he would need to identify other applicants for admission whom the government inexplicably permitted to seek a bond hearing. *See E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987) ("Different treatment of dissimilarly situated persons does not violate the equal protection clause."). He identifies no such person. Without a valid

11

comparator, the Court must conclude that his class-of-one equal protection claim collapses.

Even if Landaez-Castro had pled what is needed, his claim still fails. Equal protection does not compel Congress to treat a noncitizen stopped at the border exactly the same as one who has lived inside the country for years. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). Congress could rationally conclude that individuals caught crossing the border without inspection—or who evade inspection entirely—pose a unique flight risk. Mandating their detention under § 1225(b)(2) is a sensible, logical tool to ensure they actually appear for their removal proceedings and do not abscond. Because the statutory scheme is rationally related to the legitimate goals of border control and immigration enforcement, the equal protection claim fails. *See Fleurimond*, 2026 WL 507542, at *2.

### E. Suspension Clause (Count V)

Landaez-Castro's Suspension Clause claim fares no better. The Suspension Clause provides that the "Privilege of the Writ of Habeas Corpus shall not be suspended." U.S. Const. art. I, § 9, cl. 2. Landaez-Castro argues this guarantee is violated because the immigration court lacked jurisdiction

12

to give him a bond hearing, allegedly leaving him without any meaningful administrative or judicial avenue to test his confinement. (Doc. 1 at 24-25.)

But that argument confuses a mechanism of review with a guarantee of a specific process. The historic core of the writ of habeas corpus is to test the lawfulness of executive detention. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 127 (2020). It is not a freestanding constitutional entitlement to a discretionary bond hearing. The very fact that Landaez-Castro is currently before this Court, utilizing a § 2241 petition to challenge the statutory and constitutional basis of his confinement, demonstrates that the writ is alive and well. The Court has entertained his petition, reviewed the Government's legal authority, and concluded that his ongoing detention is lawful under §1225(b)(2). *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) ("The Clause protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account."). The Suspension Clause does not guarantee that a petitioner will prevail on the merits, nor does it empower a court to override a valid statutory detention scheme simply because an administrative agency cannot offer bail. Because Landaez-Castro has successfully accessed the federal courts to test the legality of his detention, no suspension of the writ has occurred.

13

### F. *Accardi* Doctrine (Count VI)

Landaez-Castro mounts a final challenge based on the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The premise of that doctrine is straightforward: "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984).

Landaez-Castro points to 8 C.F.R. § 287.8(c)(2)(ii), an immigration regulation stating that officers making a warrantless arrest must have reason to believe the individual is "likely to escape before a warrant can be obtained." *Id.* Because he was complying with his immigration proceedings and allegedly posed no flight risk at the time of his apprehension, he insists his warrantless arrest—and the detention that followed—must be thrown out. (Doc. 1 at 25-26.)

But that argument trips over the basic facts of his confinement. Immigration officers did not execute a warrantless arrest on the street. Instead, Landaez-Castro was pulled over and arrested by local law enforcement. ICE merely encountered him later at the county jail after state authorities had taken him into custody. When ICE assumed custody, the agency had issued a Notice to Appear. It is this charging document—which

14

formally placed him in removal proceedings under the INA—that provides the legal scaffolding for his current detention. Because the regulatory requirements for a warrantless immigration arrest simply do not apply to the facts here, Landaez-Castro's *Accardi* claim fails from the start.

And ultimately, even if there were a violation of 8 C.F.R. § 287.8(c)(2)(ii), the Court would not grant the extraordinary remedy Landaez-Castro seeks: outright release from custody. As explained, § 1225(b)(2) mandates Landaez-Castro's detention because he is an applicant for admission pending removal proceedings. A procedural quibble with how he was initially taken into custody cannot override Congress's inescapable command that he must remain detained now. What is more, if the Court were to order Landaez-Castro's release, the Government would be legally obligated by the INA to re-arrest and detain him tomorrow. The law does not demand such a pointless exercise. The writ of habeas corpus exists to remedy currently unlawful confinement, not to orchestrate a revolving door of release and immediate re-detention when the underlying statutory basis for custody remains perfectly valid. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised.").

15

### III. Conclusion

For all these reasons, Landaez-Castro's challenges to his ongoing immigration detention fall short. Congress has mandated the detention of applicants for admission while their removal proceedings play out, and the Constitution does not stand in the way of that statutory command. Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close the file.

**ORDERED** in Fort Myers, Florida on April 15, 2026.

Kyle C. Dudek
United States District Judge